UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------- X

ALLEN SMITH,

               Plaintiff,

    - against -

OFFICER KNEE and CAPT.
RICHARDSON,

              Defendants.

------------------------------------------------- X

**OPINION AND ORDER**

**08 Civ. 11079 (SAS)**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.    INTRODUCTION

Allen Smith, proceeding pro se, filed this action pursuant to section 1983 of Title 42 of the United States Code ("section 1983") against Officer Nee[1] and Captain Richardson alleging violations of his constitutional rights. Defendants now move for summary judgment, pursuant to Federal Rule of Civil Procedure 56, on the following grounds: (1) plaintiff failed to exhaust administrative remedies in accordance with the Prison Litigation Reform Act ("PLRA"); and (2) plaintiff failed to show that defendants exhibited deliberate indifference toward him in

---

[1]     Plaintiff refers to Officer Nee as "Officer Knee."

violation of his constitutional rights.[2] For the reasons set forth below, defendants'
motion for summary judgment is granted.

## II.   BACKGROUND

Smith is currently an inmate at Mid-State Correctional Facility.  At
the time of the incident, he was a pretrial detainee in the Otis Bantum Correctional
Center ("OBCC") on Rikers Island.[3]  Upon his arrival at OBCC on November 11,
2008, at approximately 2:00 a.m., Smith was placed in the punitive segregation
area at 1 South, Isolation Unit, 2 Cell.[4]  He alleges that the cell had "trash
everywhere" and a "strong foul od[o]r" which he "discovered was fe[c]es and urine
on the floor and mattress."[5]  Smith further alleges that the light did not function
and the toilet was also covered with feces.[6]  Smith testified that he complained
about the conditions of his cell to Officer Nee, who was on duty at the

---

[2]      Defendants' Memorandum of Law in Support of Motion ("Def.
Mem.") at 1-2.

[3]      *See* Complaint ("Compl.") § II. D.; Defendants' Rule 56.1 Statement
of Material Facts ("Def. 56.1") ¶¶ 1-2.

[4]      *See* Compl. § II. D.

[5]      *Id.*

[6]      *See id.*

time.[7]  Officer Nee immediately changed plaintiff's mattress[8] and brought plaintiff

a soap ball and some tissues.[9]  Smith used the soap ball and tissues to clean the

area of the cell where he put his mattress.[10]  Smith testified that Officer Nee told

him that he could not change cells at that time of night.[11]  Officer Nee told Smith

that he "did what he could do to . . . straighten it out a little bit," and that he would

have to discuss the matter with the sergeant on duty the following day.[12]  Smith

also alleges that Captain Richardson was "told numerous times about [his] problem

and [his] request for another cell."[13]  However, Smith testified that he never spoke

to Richardson himself.  Nor did Smith specify how Richardson was made aware of

any of his complaints.[14]  Smith remained in the same cell for a period of "thirty-

---

[7]      *See* Deposition of Allen Smith ("Pl. Dep."), Ex. A to Declaration of David A. Rosinus, Defendants' Counsel, in Support of Motion at 18:5-9; 56.1 Statement ¶¶ 6-7.

[8]      *See* Compl. § II. D.; Pl. Dep. at 20:7-14.

[9]      *See* Compl. § II. D.; Pl. Dep. at 24:10-25:1.

[10]      *See* Pl. Dep. at 24:23-25:1.

[11]      *See id.* at 21:16-18.

[12]      Pl. Dep. at 18:22-19:1. *See also id. at* 20:15-21:18.

[13]      Compl. § II. D.

[14]      *See* Def. 56.1 ¶ 11; Pl. Dep. at 27:2-19.

something days."[15]

Smith alleges that as a result of the conditions of his cell, he suffered from "los[s] of sleep, los[s] of appetite, [a]nd developed fear of becoming sick in a unsanitized and unhealthy envirement [sic]."[16] Smith testified that he decided to plead guilty to the then-pending criminal charge "because [he] couldn't live [in his cell] any longer."[17]

Smith claims to have adequately grieved the conditions of his cell; he alleges that he put a piece of paper, marked "grievance," on the door of his cell, which an officer picked up.[18] He did not retain a copy of this grievance.[19] Smith testified that he submitted "about three or four" grievances to which he did not receive a response.[20] Smith then wrote to several outside agencies, such as the Legal Aid Society,[21] seeking assistance and basically "left [his case] in their

---

[15]    Pl. Dep. at 23:14-17.

[16]    Compl. § III.

[17]    Pl. Dep. at 32:10-15.

[18]    *See id.* at 33:3-17.

[19]    *See id.* at 33:20-21.

[20]    *Id.* at 34:6-12.

[21]    *See id.* at 27:17-23.

4

hands."[22]

Smith now seeks money damages allegedly caused by the unsanitary conditions of his cell.[23]

## III.    LEGAL STANDARDS

### A.    Summary Judgment

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[24] "'An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. A fact is material if it might affect the outcome of the suit under the governing law.'"[25] "[T]he burden of demonstrating that no material fact exists lies with the moving party . . . ."[26] "When the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence . . . on an essential element of the

---

[22]    *Id.* at 36:18-21.

[23]    *See* Compl. § V.

[24]    Fed. R. Civ. P. 56(c).

[25]    *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009) (quoting *Roe v. City of Waterbury*, 542 F.3d 31, 34 (2d Cir. 2008)).

[26]    *Miner v. Clinton County, N.Y.*, 541 F.3d 464, 471 (2d Cir. 2008).

nonmovant's claim."[27]

To defeat a motion for summary judgment, the non-moving party must raise a genuine issue of material fact.[28] The non-moving party must do more than show that there is "'some metaphysical doubt as to the material facts'"[29] and "'may not rely on conclusory allegations or unsubstantiated speculation.'"[30] However, "'all that is required [from the non-moving party] is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.'"[31]

In determining whether a genuine issue of material fact exists, the court must "constru[e] the evidence in the light most favorable to the non-moving party and draw all reasonable inferences" in that party's favor.[32] However, "'only

---

[27]   *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

[28]   *See id.*

[29]   *Higazy v. Templeton*, 505 F.3d 161, 169 (2d Cir. 2007) (quoting *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

[30]   *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) (quoting *Fujitsu Ltd. v. Federal Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001)).

[31]   *Kessler v. Westchester County Dep't of Soc. Servs.*, 461 F.3d 199, 206 (2d Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986)).

[32]   *Sledge v. Kooi*, 564 F.3d 105, 108 (2d Cir. 2009) (citing *Anderson*, 477 U.S. at 247-50, 255).

admissible evidence need be considered by the trial court in ruling on a motion for summary judgment."[33] "'Credibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment.'"[34] Summary judgment is therefore "appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law."[35]

When the non-moving party " 'chooses the perilous path of failing to submit a response to a summary judgment motion, the district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial.'"[36] If the movant does not meet its burden of production, then the court must deny summary judgment even if the non-moving party does not oppose the motion.[37] Moreover, the court may not rely solely on the movant's statement of

---

[33]    *Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 582 F.3d 244, 264 (2d Cir. 2009) (quoting *Raskin v. Wyatt Co.*, 125 F.3d 55, 65 (2d Cir. 1997)).

[34]    *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (quoting *Fischl v. Armitage*, 128 F.3d 50, 55 (2d Cir. 1997)).

[35]    *Pyke v. Cuomo*, 567 F.3d 74, 76 (2d Cir. 2009).

[36]    *Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (quoting *Amaker v. Foley*, 274 F.3d 677, 681 (2d Cir. 2001)).

[37]    *See id.*

undisputed facts contained in its Rule 56.1 statement.[38]  The court must be satisfied

that the movant's assertions are supported by evidence in the record.[39]

Although the same standards for dismissal apply where a pro se litigant

is involved, courts must give pro se litigants special latitude in responding to a

summary judgment motion.[40]  In particular, courts must apprise pro se plaintiffs of

the consequences of failing to respond to a motion for summary judgment.[41]  In this

case, as required by Local Rule 56.2, defendants provided plaintiff with a "Notice to

Pro Se Litigant Who Opposes a Motion for Summary Judgment," dated November

8, 2010, which sets out the responsibilities of a pro se plaintiff in responding to a

motion for summary judgment.  Despite receipt of this notice, Smith failed to

respond.

**B.     PLRA - Exhaustion Requirement and Scope**

The PLRA mandates exhaustion by prisoners of all administrative

---

[38]     *See id.*

[39]     *See id.*

[40]     *See McPherson v. Coombe,* 174 F.3d 276, 280 (2d Cir. 1999) (a pro se plaintiff's papers should be interpreted "to raise the strongest arguments they suggest").

[41]     *See id.* at 282.

remedies before bringing an action regarding prison conditions.[42]  The PLRA's

exhaustion requirement is mandatory.[43]  Failure to exhaust is an absolute bar to an

inmate's action in federal court: "[section] 1997e(a) *requires* exhaustion of

available administrative remedies *before* inmate-plaintiffs may bring their federal

claims to court *at all*."[44]  Because the plain language of section 1997e(a) states "no

action shall be brought," an inmate must have exhausted his claims at the time the

initial complaint was filed as "[s]ubsequent exhaustion after suit is filed . . . is

insufficient."[45]  Furthermore, the United States Supreme Court has held that "the

PLRA's exhaustion requirement applies to all inmate suits about prison life,

whether they involve general circumstances or particular episodes, and whether

they allege excessive force or some other wrong."[46]

> Before bringing suit, an inmate must fully present his claim for internal

resolution within the correctional facility where he is incarcerated and the New

---

[42]    *See* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.").

[43]    *See Neal v. Goord*, 267 F.3d 116, 122 (2d Cir. 2001).

[44]    *Id.* (quotation marks and citation omitted, emphasis in original).

[45]    *Id.*

[46]    *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

9

York State Department of Correctional Services ("DOCS").  The Inmate Grievance

Program ("IGP") is the relevant administrative vehicle in New York.[47]  In order to

survive a motion to dismiss, an inmate must fully exhaust all administrative

remedies, at all levels of appeal.[48]  Thus, an inmate's claim is not exhausted until he

appeals to CORC and receives a final decision regarding his grievance.[49]  Only

upon such a final determination by CORC is an inmate deemed to have exhausted

---

[47]    DOCS established the IGP with specific procedures which must be
followed in order for a prisoner to exhaust his administrative remedies.  *See* N.Y.
Correct. Law § 139 (2003) (directing the DOCS Commissioner to establish
grievance resolution committees in each correctional facility under his
jurisdiction); N.Y. Comp. Codes R. & Regs., tit. 7, § 701.1 (2006) (instituting
IGP).  The grievance system available to an inmate incarcerated in New York is a
three-step process.  First, the formal grievance process is started by an inmate
submitting a written complaint on a readily available Inmate Grievance Complaint
Form, or on plain paper, containing a concise, specific description of the problem
and the requested action.  The grievance must be submitted to the Grievance Clerk
of the Inmate Grievance Resolution Committee ("IGRC") within fourteen calender
days of the alleged occurrence.  *See* N.Y. Comp. Codes R. & Regs., tit. 7, §
701.7(a)(1).  The second step of the administrative procedure is filing an appeal
with the Superintendent of the facility within four working days after receipt of the
IGRC's written response, if that response unfavorable.  *See id.* § 701.7(b).  The
third step is to appeal to the Central Office Review Committee ("CORC") for a
final administrative determination within four working days after receipt of the
Superintendent's written response, if unfavorable.  *See id.* § 701.7(c).  These
grievance procedures are outlined in the inmate behavior booklets which are
routinely distributed to inmates when they enter a correctional facility.  *See Arnold
v. Goetz*, 245 F. Supp. 2d 527, 539 (S.D.N.Y. 2003).

[48]    *See Porter,* 534 U.S. at 524 ("[E]xhaustion is a prerequisite to suit.").

[49]    *See Hemphill v. State of New York,* 380 F.3d 680, 682 (2d Cir. 2004).

his administrative remedies.[50]

"While the Second Circuit has recognized that the PLRA's exhaustion requirement is mandatory,"[51] it has also recognized the following three exceptions to the exhaustion requirement: "when (1) administrative remedies are not available to the prisoner; (2) defendants have either waived the defense of failure to exhaust or acted in such a way as to estop them from raising the defense; or (3) special circumstances, such as reasonable misunderstanding of the grievance procedure, justify the prisoner's failure to comply with the exhaustion requirement."[52]  The Second Circuit has held that "alerting the prison officials as to the nature of the wrong for which redress is sought," does not constitute proper exhaustion.[53] "[N]otice alone is insufficient because '[t]he benefits of exhaustion can be realized only if the prison grievance system is given fair opportunity to consider the grievance' and '[t]he prison grievance system will not have such an opportunity

---

[50]     *See id.  See also Sulton v. Greiner*, No. 00 Civ. 727, 2000 WL 1809284, at *4 (S.D.N.Y. Dec. 11, 2000) ("[B]ecause Sulton failed to exhaust his administrative remedies by appealing the grievance to the CORC, his claims of medical indifference will be dismissed pursuant to 42 U.S.C. § 1997e.").

[51]     *Bellamy v. Mount Vernon Hosp.,* No. 07 Civ. 1801, 2009 WL 1835939, at *3 (S.D.N.Y. June 26, 2009).

[52]     *Ruggiero v. County of Orange*, 467 F.3d 170, 175 (2d Cir. 2006).

[53]     *Marias v. Zenk*, 495 F.3d 37, 44 (2d Cir. 2007) (quotation marks, citation and brackets omitted) (finding that inmate could not satisfy the PLRA's exhaustion requirement by making informal complaints to prison officials).

unless the grievance complies with the system's critical procedural rules.'"[54]

### C.    Deliberate Indifference Under 42 U.S.C. § 1983

Section 1983 states, in relevant part, that

[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .[55]

Section 1983 "does not create a federal right or benefit; it simply provides a mechanism for enforcing a right or benefit established elsewhere."[56]  "The purpose of [section]1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails."[57]  In order to state a claim under section 1983, a

---

[54]    *Id.* (quoting *Woodford v. Ngo,* 548 U.S. 81, 95 (2006) (brackets in original)).

[55]    42 U.S.C. § 1983.

[56]    *Morris-Hayes v. Board of Educ. of Chester Union Free Sch. Dist.,* 423 F.3d 153, 159 (2d Cir. 2005) (citing *Oklahoma City v. Tuttle,* 471 U.S. 808, 816 (1985)). *Accord Gonzaga Univ. v. Doe,* 536 U.S. 273, 285 (2002) ("'[O]ne cannot go into court and claim a 'violation of § 1983' – for § 1983 by itself does not protect anyone against anything.'") (quoting *Chapman v. Houston Welfare Rights Org.,* 441 U.S. 600, 617 (1979)).

[57]    *Wyatt v. Cole,* 504 U.S. 158, 161 (1992).

12

plaintiff must show: (1) that the conduct complained of was committed by a person or entity acting under color of state law; and (2) that the conduct deprived a person of rights, privileges, or immunities secured by the Constitution.[58]  Furthermore, imposition of liability under section 1983 requires a defendant's direct involvement in the alleged constitutional violation.[59]

As a pre-trial detainee at the time of the incident, Smith's claims are governed by the Fourteenth Amendment.[60]  In substance, Smith alleges a claim under the Eighth Amendment, which applies to the States through the Fourteenth Amendment and enjoins them from inflicting cruel and unusual punishments.[61]  The

---

[58]     *See Palmieri v. Lynch,* 932 F.3d 73, 78 (2d Cir. 2004).

[59]     In section 1983 suits, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal v. Ashcroft,* 129 S. Ct. 1937, 1948 (2009).  *Accord Wright v. Smith,* 21 F.3d 496, 501 (2d Cir. 1994) ("It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under §1983.'") (quoting *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir. 1991)).

[60]     *See Cuoco v. Moritsugu,* 222 F.3d 99, 106 (2d Cir. 2000).  In the case of a pre-trial detainee, "'the cruel and unusual punishment proscription of the Eighth Amendment to the Constitution does not apply,' because 'as a pre-trial detainee, [the plaintiff is] not being punished.'  Instead, a person detained prior to conviction receives protection against mistreatment at the hands of prison officials under the . . . Due Process Clause of the Fourteenth Amendment if held in state custody." *Caiozzo v. Koreman,* 581 F.3d 63, 69 (2d Cir. 2009) (quoting *Cuoco,* 222 F.3d at 106 (alteration in original)).

[61]     *See Robinson v. California,* 370 U.S. 660, 666 (1962).  '[T]he standard for analyzing a pre-trial detainee's Fourteenth Amendment claim is the

conditions of a prisoner's confinement can give rise to an Eighth Amendment violation if the prisoner satisfies both an objective and a subjective prong.[62]

Under the objective prong, an inmate must prove "that the deprivation alleged is 'objectively sufficiently serious' such that plaintiff was denied 'the minimal civilized measure of life's necessities.'"[63] This includes "not only deprivations of medical care that produce physical torture and lingering death, but also less serious denials which cause or perpetuate pain."[64] The condition, however, must be "one of urgency that may produce death, degeneration, or extreme pain."[65] This is "[b]ecause society does not expect or intend prison conditions to be comfortable, only extreme deprivations are sufficient to sustain a 'conditions-of-confinement' claim."[66] Thus, the Eighth Amendment protects only "an inmate's right to be free from conditions of confinement that impose an excessive risk to the

---

same as the Eighth Amendment standard." *Thomas v. Nassau County Corr. Ctr.,* 288 F. Supp. 2d 333, 337 (E.D.N.Y. 2003).

[62]   *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

[63]   *Trammell v. Keane,* 338 F.3d 155, 162 (2d Cir. 2003) (quoting *Farmer,* 511 U.S. at 834).

[64]   *Todaro v. Ward*, 565 F.2d 48, 52 (2d Cir. 1977). *Accord Brady v. Griffith*, No. 95 Civ. 2364, 1998 WL 814630, at *3 (S.D.N.Y. Nov. 23, 1998).

[65]   *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994).

[66]   *Blyden v. Mancusi*, 186 F.3d 252, 263 (2d Cir. 1999).

14

inmate's health or safety."[67]

The subjective prong requires a showing that defendant acted with a "sufficiently culpable state of mind," *i.e.,* with 'deliberate indifference to inmate health or safety.'"[68] The level of culpability must be something "more than negligence, but less than conduct undertaken for the very purpose of causing harm."[69] Under the subjective prong, plaintiff must demonstrate that defendants engaged in conduct that was more than simply negligent.[70] Thus, deliberate indifference will exist when an official "knows that inmates face a substantial risk of serious harm and disregard that risk by failing to take reasonable measures to abate it."[71]

## IV.   DISCUSSION

### A.    Smith Has Failed to Exhaust Administrative Remedies

Defendants argue that Smith has not exhausted the required

---

[67]    *Farmer*, 511 U.S. at 837.

[68]    *Phelps v. Kapnolas,* 308 F.3d 180, 185 (2d Cir. 2002) (quoting *Farmer*, 511 U.S. at 837).

[69]    *Hathaway,* 37 F.3d at 66.

[70]    *See Bryant v. Mafucci,* 923 F.2d 979, 983 (2d Cir. 1991) (defining gross negligence or reckless conduct as conduct "where defendant has reason to know of facts creating a high degree of risk of physical harm to another and deliberately acts or fails to act in conscious disregard or indifference to that risk").

[71]    *Farmer,* 511 U.S. at 847.

15

administrative remedies.[72]  Smith contends that he submitted "about three or four"

grievances about the alleged conditions of his cell, but that he did not receive a

response to these grievances.[73]  Smith testified that he "figured [the grievance

system at OBCC] worked the same as it works anywhere else . . . [where] you fill

out your grievance and send it to the grievance office."[74]  However, instead of

appealing this alleged lack of a response, he wrote several outside agencies

describing his situation.[75]

   After submitting an initial informal grievance about the conditions of

his cell, Smith failed to exhaust the remaining levels of appeal.  The Second Circuit

does not excuse a failure to exhaust when an inmate/plaintiff admittedly did not

appeal to the highest available level of administrative review and provides no

justifiable explanation for his failure to do so.[76]  Smith has not submitted any

opposition papers, nor has he attempted to justify his failure to meet the exhaustion

requirement.  However, this Court need not address whether Smith fully exhausted

---

[72] *See* Def. Mem. at 3-5.

[73] Pl. Dep. at 34:8-12.

[74] *Id.* at 33:24-34:5.

[75] *See id.* at 27:17-23.

[76] *See Berry v. Kerik*, 366 F.3d 85, 88 (2d Cir. 2004) (stating that "in the absence of any justification for not pursuing available remedies," plaintiff/inmate's federal lawsuits were properly dismissed for failure to exhaust).

his administrative remedies as it is clear that Smith's claim is fatally flawed on the merits.

**B.      Section 1983 Claim of Deliberate Indifference**

In order to prevail on his section 1983 claim for the violation of his Eighth Amendment right, Smith must show that Officer Nee and Captain Richardson were directly involved in the alleged violation of his constitutional rights.  Smith has not shown that Richardson was directly involved in the allegedly unsanitary conditions of his cell or in any failure to mitigate the situation.[77] Although Smith alleges that Richardson "was told numerous times about [his] problem,"[78] he has failed to submit any evidence to show that Richardson even knew of the conditions of his cell.[79]  In fact, Smith admitted that he had not personally spoken with Richardson, and conceded that he was not actually aware whether Richardson had ever learned of the alleged conditions of his cell.[80] Moreover, Richardson states that he "only learned about the allegedly filthy

---

[77]      *See* Def. Mem. at 8.

[78]      Compl. § II.D.

[79]      *See* Def. Mem. at 8;  *Accord* Declaration of Defendant Captain Freddy Richardson ("Richardson Decl.")  ¶¶ 3-4.

[80]      *See* Pl. Dep. at 27:6-28:16.

conditions of Plaintiff's cell after reading Plaintiff's Complaint in this lawsuit."[81]
Because Smith has failed to establish that Richardson was personally involved in
the alleged constitutional violations, the claim against Richardson must be
dismissed.

In order to establish liability as to Officer Nee, Smith must satisfy both
the objective and subjective prongs of an Eighth Amendment violation. Assuming
that Smith experienced a sufficiently serious deprivation under the objective prong
based on the unsanitary conditions of his cell,[82] Smith still fails to establish that
Officer Nee acted with a "sufficiently culpable state of mind" to satisfy the
subjective prong – *i.e.,* deliberate indifference. Reading Smith's pro se Complaint
liberally,[83] Smith alleges that Nee knew of and disregarded the conditions of his
cell.[84] Despite these allegations, Smith has failed to offer any evidence that Officer
Nee was deliberately indifferent to the conditions of his cell. Although Nee did not

---

[81]   Richardson Decl. ¶¶ 3-4.

[82]   *See Blissett v. Coughlin,* 66 F.3d 531, 537 (2d Cir. 1995) (noting that,
"[u]nder contemporary standards of decency, a jury could justifiably consider
incarceration of [an inmate] for several days in a dark, stuffy, feces-smeared . . .
cell [to be a] violation of [his] Eighth Amendment right to be free from cruel and
unusual conditions of confinement").

[83]   *See, e.g., Baldwin County Welcome Ctr. v. Brown,* 446 U.S. 147, 164
(1984) ("[P]ro se pleadings are to be given a liberal construction.").

[84]   *See* Compl. § II.D.

18

place Smith in a different cell as Smith would have preferred,[85] Smith testified that Nee changed Smith's mattress at 2:00 a.m. on the day of Smith's arrival to OBCC,[86] provided him with soap and tissues to clean up the cell,[87] and advised him that he would have to "wait until the next day to straighten [the situation] out."[88] Moreover, Smith stated that Nee had "[done] what he could do to – to – straighten it out a little bit."[89]  Officer Nee took reasonable measures to abate Smith's situation and did not exhibit deliberate indifference to Smith's needs. Therefore, the claim against Nee must be dismissed.

## V.    CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is granted and plaintiff's Complaint is dismissed in its entirety.  The Clerk of Court is directed to close this motion (Docket # 9) and this case.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

---

[85]    *See* Pl. Dep. at 20:17.

[86]    *See id.*

[87]    *See id.*

[88]    *Id.* at 18:13-14.

[89]    *Id.* at 18:24-19:1.

19

Dated:       New York, New York
             April 18, 2011

**- Appearances -**

**Plaintiff (Pro Se):**

Allen Smith
# 08-A-6227
Mid-State Correctional Facility
9005 Old River Road
P.O. Box 2500
Marcy, New York 13403


**For Defendants:**

David A. Rosinus, Jr.
Assistant Corporation Counsel
New York City Law Department
100 Church Street, Room 2-165
New York, New York 10007
(212) 788-8316